**Reversed and Remanded in Part and Affirmed in Part and Memorandum Opinion filed October 13, 2022.**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-21-00592-CV

_____

## MARIA CRISTINA CHIROLLA DONNELLY, Appellant

## V.

## JOHN P. DONNELLY, ERIC DONNELLY, & MARK DONNELLY, Appellees

**On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 477195-401**

## MEMORANDUM OPINION

Maria Cristina Chirolla Donnelly appeals a summary judgment granted in favor of John P. Donnelly, Eric Donnelly, and Mark Donnelly. For the following reasons, we affirm in part and reverse and remand in part.

### BACKGROUND

Maria and George Donnelly married in 2010. Appellees, John, Eric, and Mark

Donnelly were George's children from a previous marriage. Before George and Maria married, they executed a Premarital Property Agreement in which they agreed that all property each spouse owned before marriage would remain that spouse's separate property. Before George's death, he executed another will purporting to revoke all prior wills and the Premarital Property Agreement, leaving all his estate to Maria. George also designated Maria as the beneficiary on his life insurance policy.

George owned an Individual Retirement Account (IRA) at the time of his first wife's death. The proceeds of George's IRA are at the heart of the underlying action. In September 2007, after George's first wife died, he named his three sons, John, Mark, and Eric Donnelly as the beneficiaries of his IRA. It is undisputed that George did not change his beneficiary designation on his IRA before he died in May 2019.

After George's death Maria filed the underlying action to recover the proceeds of the IRA. In Maria's second-amended petition she requested a declaratory judgment under the Uniform Declaratory Judgments Act (DJA) declaring that she was the beneficiary of George's IRA. In seeking that declaration Maria alleged (1) the IRA was community property; (2) George intended that Maria be the beneficiary of the IRA; and (3) George was required to designate her as the beneficiary because the IRA had been rolled over from a 401(k) account.

Maria further asserted tort claims in which she alleged that John Donnelly, acting in his capacity as George's financial advisor, breached a fiduciary duty owed to George by failing to change the beneficiary designation on the IRA. Finally, Maria alleged that John had a duty to disclose to George that John had not changed the beneficiary designation on the IRA. Maria relied on statements made at a meeting held at the Briar Club while George was still alive. George, John, and Maria were at the meeting and, according to Maria's affidavit, George asked John to change the

2

beneficiary designation on his IRA from his sons to Maria.

Appellees answered Maria's petition, and later filed a motion for traditional and no-evidence summary judgment primarily on the grounds that Maria could not establish any interest in the IRA. Appellees asserted that George created the IRA before his marriage to Maria and made no contributions to the account during their marriage. Appellees asserted, therefore, that the IRA was George's separate property at the time of his death. Appellees attached to their motion for summary judgment the beneficiary designation forms signed by George naming appellees as the beneficiaries of the IRA. Appellees further relied on the Premarital Property Agreement signed as evidence that Maria agreed to the separate property characterization of the IRA.

John also asserted Maria failed to produce any evidence that John owed a fiduciary duty to George or that he breached such a duty. John asserted that Maria failed to produce any evidence of fraud by non-disclosure because there was no evidence that George intended to change the beneficiary designation on his IRA.

Maria filed several documents in response to appellees' motion for summary judgment including an affidavit in which she averred that George instructed John to change the beneficiary designation on his IRA at the Briar Club dinner. Appellees objected to Maria's affidavit on the grounds that it contained hearsay and that her recitations of statements made by George were not admissible under Texas Rule of Evidence 601(b), otherwise known as the Dead Man's Rule.

The trial court sustained appellees' objections to Maria's affidavit and granted summary judgment dismissing all Maria's claims. Appellees subsequently filed a motion for attorney's fees pursuant to section 37.009 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (permitting trial court to award costs and attorney's fees in a declaratory judgment action). After a hearing,

3

the trial court signed a final judgment dismissing all Maria's claims and awarding attorney's fees to appellees. This appeal followed.

In five issues Maria challenges the trial court's grant of summary judgment on her claims seeking declaratory judgment and damages for breach of fiduciary duty and fraud. Maria further challenges the trial court's ruling excluding her affidavit and the trial court's award of attorney's fees. Finally, Maria asserts the trial court lacked authority to render summary judgment and award fees because the January order was a final judgment.

## ANALYSIS

## I.    Standard of Review and Applicable Law

The DJA generally permits a person who is interested under a deed or other contract, or whose rights, status, or other legal relations are affected by a statute or contract, to obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code § 37.004(a). In a declaratory-judgment action, a party who asserts an affirmative claim for relief has the burden of proving its allegations. *See Saba Zi Expl., LP v. Vaughn*, 448 S.W.3d 123, 129 n.11 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (party seeking declaration bears burden of establishing entitlement to requested declaratory judgment). Because the trial court determined the challenged declaratory-judgment issue through summary judgment, we review the propriety of the trial court's declarations under the same standards we apply to summary judgments. *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

We review a no-evidence summary judgment under a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) ("A no-evidence summary judgment is essentially a pretrial directed verdict, and we

4

apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict."). A no-evidence summary judgment will be sustained when: "(a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact." *Id*. at 751 (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

We review a trial court's order granting a traditional summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of summary judgment, we consider all the evidence in the light most favorable to the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pled and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

If the trial court grants summary judgment without specifying the grounds, we affirm the judgment if any of the grounds presented are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We first review the trial court's no-evidence summary judgment under the standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The nonmovant, here Maria, must produce summary-judgment evidence raising a genuine issue of material fact to defeat the summary judgment under that provision. Tex. R. Civ. P. 166a(i). If Maria failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellees' proof satisfied the Rule 166a(c) burden. *See Ford Motor*, 135 S.W.3d at 600; *Walker v. Holmes, Diggs,*

5

*Eames & Sadler*, No. 14-19-00234-CV, 2020 WL 2120295, at *3 (Tex. App.—Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.).

## II. The trial court did not err in granting summary judgment on Maria's declaratory judgment claims.

In Maria's first issue she challenges the trial court's dismissal of her claims by summary judgment. Maria sought a declaratory judgment determining (1) the marital property character of the IRA; and (2) Maria was the beneficiary of the IRA. In the alternative, Maria sought declaratory judgment that George intended Maria to be the beneficiary of the IRA, or that George was required to designate Maria as the beneficiary.[1]

Maria also filed tort claims for breach of fiduciary duty and fraud. The trial court's summary judgment dismissed all of Maria's claims. We first address Maria's issue challenging the trial court's dismissal of her claims for declaratory judgment. We address the dismissal of her tort claims below.

### A. IRA Beneficiary Designation

Maria sought a declaratory judgment that she was the beneficiary of George's IRA. An IRA is a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument meets certain requirements under the United States Code. 26 U.S.C.A. § 408(a). It is undisputed that George's IRA was funded before George's marriage to Maria and was moved from Chase Bank to Merrill Lynch in 2001. The original beneficiary on the IRA was George's first wife. Shortly after the death of George's first wife, on September 12, 2007, he changed the beneficiary designation on his IRA to his three sons, appellees in this appeal. One year later, George signed another

---

[1] Maria appears to have abandoned her "401(k) rollover" argument on appeal, which, she asserted, would have required George to designate her as his beneficiary.

beneficiary designation form, continuing to designate his three sons as his beneficiaries on the IRA. Finally, in 2010, four months before his marriage to Maria, George again designated his sons as his beneficiaries:

In construing an unambiguous contract or in determining whether an ambiguity exists, courts may not seek the parties' intent beyond the meaning the contract language reasonably yields when construed in context. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo

using well-settled contract-construction principles. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787 (Tex. 2017). "We therefore 'presume parties intend what the words of their contract say' and interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *URI, Inc.*, 543 S.W.3d at 764 (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) and *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *URI, Inc.*, 543 S.W.3d at 764–65. "[N]o issue regarding the parties' intentions is raised unless the [contract] is ambiguous—and evidence of those intentions cannot be used to create an ambiguity." *Nat'l Union Fire Ins. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 n.5 (Tex. 1995).

If a court concludes that the parties' contract is unambiguous, it may still consider the surrounding "facts and circumstances," but "simply [as] an aid in the construction of the contract's language." *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) (quoting *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)). Courts may consider the context in which an agreement is made when determining whether the contract is ambiguous, but the parties may not rely on extrinsic evidence "to create an ambiguity or to give the contract a meaning different from that which its language imports." *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011). We do not consider parol evidence when reviewing unambiguous contracts. *Franklin Templeton Bank & Tr. v. Tigert*, No. 05-09-01472-CV, 2011 WL 2507834, at *4–5 (Tex. App.—Dallas

June 24, 2011, no pet.) (declining to consider parol evidence in determining the beneficiary of an IRA).

Neither Maria, nor appellees, have argued that the IRA beneficiary designation form naming appellees as beneficiaries is ambiguous. Maria argues, however, that because she has alleged fraud, we may consider parol evidence in determining the beneficiaries of the IRA. The IRA beneficiary designation form unambiguously names appellees as beneficiaries of the IRA. Maria has not attempted to introduce parol evidence to show that George's signature on the beneficiary designation forms was obtained by fraud or that the forms do not reflect George's intent when he signed them. Maria tried to introduce parol evidence that George's intent changed after he signed the forms. Because the trial court could not consider parol evidence to contradict an unambiguous contract, it could not consider Maria's purported evidence of intent to determine the beneficiary of the IRA. *See id.*

As the party asserting affirmative relief under the DJA Maria had the burden to produce some evidence that she was the beneficiary of the IRA. *See Vaughn*, 448 S.W.3d at 129. Because Maria produced no evidence to contradict the unambiguous beneficiary designation form, the trial court did not err in granting appellees' motion for summary judgment with regard to the declaratory judgment action declaring that appellees were the beneficiaries of the IRA.

## B. Marital property characterization of IRA.

Maria further requested a declaration that George's IRA was community property at the time of his death. As evidence of the marital property character of the IRA, Maria relies on the community property presumption.

The Family Code defines separate property as property owned or claimed by a spouse before marriage, acquired during the marriage by gift, devise, or descent,

9

or as a recovery for personal injuries sustained during the marriage. Tex. Fam. Code § 3.001; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Community property consists of the property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code § 3.002; *Barnett*, 67 S.W.3d at 111. The characterization of property as either community or separate is determined by the inception of title to the property. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Inception of title occurs when a party first has a claim to the property by virtue of which title is finally vested. *Id*. All property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property. Tex. Fam. Code § 3.003(a).

In the trial court, and on appeal, Maria asserts appellees failed to overcome the community property presumption. Maria alleged that, upon George's death, the IRA was presumed to be community property and appellees had the obligation to overcome that presumption. Appellees responded that the IRA was George's separate property because George acquired the account before his marriage to Maria and did not make any additional contributions to the account during the marriage. Appellees further asserted that Maria agreed that the IRA would remain George's separate property when she signed the Premarital Property Agreement. The Premarital Property Agreement contained the following pertinent provisions:

> Existing Separate Property. All properties, both real and personal, owned by a party as of the date of this Agreement [September 30, 2010] shall be the separate property of that party.
>
> *****
>
> Increases in Value. All increases in value in a party's separate property, including, without limitation, all increases in value attributable to the time, toil, skill, efforts, and work of either party (or the agent of either party) shall be and remain the separate property of the spouse owning such separate property.

10

\*\*\*\*\*

    <u>Retirement Benefits</u>. In addition, to the extent consistent with the terms of this Agreement and the requirements of the Retirement Equity Act of 1984, as amended from time to time ("REA"), each party agrees to execute such consents, as may be required to waive in writing all statutory rights, if any, which he or she may now have or may hereafter acquire by virtue of being a participant's spouse or former spouse in any qualified plans that are governed by REA in which the other party is a participant and owns as his or her separate property under applicable State or Federal law. Such rights include, without limitation, rights to pre-retirement survivor annuities and joint and survivor annuities.

Generally, in Texas, courts interpret premarital agreements like other written contracts. *See, e.g. Beck v. Beck*, 814 S.W.2d 745, 748–49 (Tex. 1991). In interpreting a written contract, the primary concern of the court is to ascertain the true intentions of the parties, as expressed in the instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).

Maria does not dispute that the IRA belonged to George on the date of the agreement, September 30, 2010. Maria further does not dispute the plain language of the agreement or that she executed the agreement. Maria argues, however, that George revoked the Premarital Property Agreement in his will. In Texas, however, after marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties. Tex. Fam. Code § 4.005; *see also Matter of Marriage of Sauls & Worley*, No. 06-20-00103-CV, 2021 WL 5364775, at \*4 (Tex. App.—Texarkana Nov. 18, 2021, no pet.). George's will is not a written agreement signed by both parties revoking the premarital agreement.

Maria has presented no evidence of a written agreement to revoke the premarital agreement signed by both parties. As such, Maria cannot rely on George's purported revocation of the Premarital Property Agreement to avoid her agreement

11

that George's separate property as of September 30, 2010, and any increases in the value of that property, would remain his separate property. *See* Tex. Fam. Code § 4.005.

By producing the Premarital Property Agreement in which Maria agreed that the IRA was George's separate property, appellees presented evidence rebutting the community property presumption. Because Maria failed to present evidence to the contrary, the trial court did not err in granting appellees' no-evidence summary judgment on Maria's declaratory judgment claims.

We overrule the portion of Maria's first issue that challenges summary judgment under the DJA.

## III.    The trial court did not abuse its discretion in excluding Maria's affidavit.

Before turning to the portion of the judgment that dismissed Maria's breach of fiduciary and fraud claims, we will address the exclusion of Maria's affidavit as violative of Texas Rule of Evidence 601(b).

In Maria's third issue on appeal, she challenges the trial court's exclusion of her affidavit.

In Maria's petition she asserted that John, as financial advisor to George, owed George fiduciary duties of fair dealing, complete candor, to refrain from self-dealing, and full disclosure.[2] Maria alleged that John breached his duty to George by failing to change the beneficiary designation from the appellees to Maria. Maria further alleged that John committed fraud by failing to disclose that he had not changed the beneficiary designation form.

John filed a motion for summary judgment in which he alleged that Maria had

---

[2] Maria did not assert tort claims against George's other two sons.

12

presented no evidence of a fiduciary relationship or breach of such relationship. John further asserted that Maria had presented no evidence to establish fraud by nondisclosure. Maria responded to the motion and asserted John was a fiduciary because he served as George's investment advisor. Maria attached an affidavit as evidence that George intended to name her as the beneficiary of his IRA.

As evidence of George's intent, Maria filed an affidavit, which stated, in pertinent part:

> In late June of 2017, George and I met with his son and our financial advisor, John Donnelly, at The Briar Club. At this meeting, George gave John a copy of his Will. In my presence, George explained to John the intent and purposes of his Will — for me to receive all of his estate, without exception — upon his death. George also explained to John that he was going to change the beneficiary of his life insurance to designate me as the beneficiary. George further explained to John, his son and our financial advisor, that George wanted his IRA Account to pass to me upon his death. George directed John to ensure that the beneficiary designation on his IRA be changed to reflect that I would receive all of the property in his IRA Account at the time of his death. At the meeting, John confirmed his understanding of his father's direction to him concerning the change of the beneficiary designation. I heard John repeat George's direction: "You want me to change the beneficiary designation on the IRA so that Maria Cristina receives those benefits at your death?" To me, John did not appear happy to hear this news and direction. George mentioned that he had made gifts to John, Eric and Mark, but John complained that the gifts were small in relation to the value of George's IRA. John abruptly left the meeting.
>
> \*\*\*\*\*
>
> George and I also visited the Merrill Lynch Houston Office to discuss with our financial advisor, John Donnelly, among other things, George's intent that I would have access to funds at his death, including John's [sic] IRA Account. With regard to joint ownership, John initially told us that current law did not permit Merrill Lynch to name me on a Merrill Lynch joint account and on the IRA as a designated beneficiary. John attributed this statement to me being a former Consul General of

13

Colombia and part of the diplomatic community. During the meeting, I told John that I was a United States citizen and that I had resigned from the general counsel role years prior. A week later, John advised us that such a restriction — in fact — did not apply and the accounts' designation and retitling would be recorded as John stated he intended to happen []i.e., that I would be or had been the designated beneficiary of George's Merrill Lynch accounts, including the IRA Account. Furthermore, at this time, George directed John, our Merrill Lynch advisor, to allow me access to the banking account and to change the beneficiary on the IRA Account to designate me as its beneficiary; specifically, to read "Primary Beneficiary–Maria Cristina Chirolla Donnelly." John Donnelly verbally repeated this direction, and I saw John making a note on his notepad of this specific designation.

After these meetings, George confirmed to me that I would receive all of his estate through his Will, the Transfer on Death Deed, and the changing of the beneficiaries of his life insurance and Merrill Lynch IRA Account at his death.

John objected to Maria's affidavit as containing hearsay and as violative of Texas Rule of Evidence 601, known as the Dead Man's Rule. The trial court sustained John's objections and excluded Maria's affidavit.

## A.    Standard of review and applicable law

While we review summary judgments de novo, a trial court's decision to exclude or admit summary judgment evidence is reviewed for an abuse of discretion. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017)). Accordingly, we must determine if the trial court abused its discretion in excluding Maria's affidavit. *See id.*; *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016) (A trial court's evidentiary rulings are reviewed for abuse of discretion). "An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The Dead Man's Rule provides that:

14

> In civil actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate, or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent based in whole or in part on such oral statement.

Tex. R. Evid. 601.

The purpose of the Dead Man's Rule is threefold: (1) to put the parties on an equal footing at trial, (2) to prevent one, to the detriment of the other, from taking advantage of the fact that the lips of the deceased have been sealed, and (3) to render incompetent testimony as to conversations and transactions with a deceased in a suit in which the deceased might deny the conversations and transactions if he were alive. *Lewis v. Foster*, 621 S.W.2d 400, 402 (Tex. 1981). The test has been stated as: If the witness offered should testify falsely, could the deceased, if living, controvert it by his own personal knowledge? *Id*.

Texas courts construe the Dead Man's Rule narrowly. *Quitta v. Fossati*, 808 S.W.2d 636, 641 (Tex. App.—Corpus Christi 1991, writ denied) (citing *Lewis*, 621 S.W.2d at 404)). The rule does not prohibit testimony concerning statements by the deceased that are properly corroborated. *See id*. Corroborating evidence must tend to support some of the material allegations or issues that are raised by the pleadings and testified to by the witness whose evidence is sought to be corroborated. *Id*. It may come from any other competent witness or other legal source, including documentary evidence. *Id*. Corroborating evidence need not be sufficient standing alone, but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth. *Id*. For example, it is sufficient if the corroborating evidence shows conduct by the deceased that is generally consistent with the

15

testimony concerning the deceased's statements. *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008, no pet.). Corroboration may come from any other competent witness or other legal source, including documentary evidence. *Powers v. McDaniel*, 785 S.W.2d 915, 920 (Tex. App.—San Antonio 1990, writ denied) (holding that checks reflecting property purchase were sufficient to corroborate oral agreement concerning sale of property).

### B. Application

Maria does not challenge the applicability of the Dead Man's Rule, but asserts that George's statements as recited in her affidavit were corroborated by other summary-judgment evidence. As corroboration of the above-quoted sections of Maria's affidavit, Maria asserts that she presented evidence that:

- John was a member of the Briar Club;

- John testified that he had no reason to dispute that he met Maria and George for dinner at the Briar Club in June of 2017;

- George gave John a copy of his will during this meeting;

- George changed the beneficiary of his life insurance policy to Maria; and

- John, according to Maria, repeated George's instruction to change the beneficiary of the IRA.

The alleged corroboration asserted by Maria does not tend to confirm and strengthen her testimony that George intended to change the IRA beneficiary, nor does it tend to show the probability of its truth. The fact that George changed the beneficiary of his life insurance to Maria and changed his will to bequeath his entire estate to Maria is not corroborative of his alleged intent to change his IRA beneficiary.

Maria's allegation that John repeated George's testimony is not corroboration

16

as it is still Maria's testimony. Corroboration of an interested party's testimony may not emanate from her or depend on her credibility. *Garcia v. Garcia-Giesick*, No. 04-00-00360-CV, 2001 WL 1479244, at \*2 (Tex. App.—San Antonio Nov. 21, 2001, no pet.) (mem. op.) (citing *Tramel v. Estate of Billings*, 699 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ)). Maria is an interested party. Accordingly, we cannot look to Maria's own affidavit to corroborate her affidavit. *See id.* None of the statements in Maria's affidavit that purport to reveal George's intent were corroborated by sufficient evidence reflecting conduct by George that is generally consistent with Maria's testimony concerning George's statements.

We therefore conclude the trial court did not abuse its discretion in excluding Maria's affidavit under the Texas Rules of Evidence. We overrule Maria's third issue.

## IV. The trial court did not err in dismissing Maria's tort claims.

In addition to declaratory judgment Maria sought damages against John for breach of fiduciary duty and fraud.[3] Maria alleged that John owed George and her a fiduciary duty in his formal role as their investment advisor and his informal role as George's son. Maria alleged that John breached his fiduciary duty by failing to name her as the beneficiary of George's IRA. In seeking damages for fraud, Maria alleged that John had a duty to disclose to George that the beneficiary designation to the IRA had not been changed.

---

[3] Although Maria's petition named all three defendants in this portion of her petition, at the hearing on the summary judgment, she stated on the record that her tort claims were filed against John alone and the trial court granted Mark and Eric's summary judgment on those grounds. *See generally FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022) ("A trial court's on-the-record, unequivocal oral ruling on an objection to summary judgment evidence qualifies as a ruling under Texas Rule of Appellate Procedure 33.1, regardless of whether it is reduced to writing.").

John filed a motion for summary judgment in which he asserted, inter alia, that Maria failed to produce evidence of a breach of fiduciary duty or fraud. Maria responded by asserting that she did not bear the burden of proof on these claims because of a "presumption of unfairness," which shifts the burden of proof to the fiduciary.

To prevail on a claim for breach of fiduciary duty, a plaintiff must establish that (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 650 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (discussing existence of fiduciary relationship as element of fiduciary duty claim). "As a general rule, the plaintiff must establish the existence of a duty; the burden is not on the defendant to show that it had no duty." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004).

Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

The only evidence Maria presented to support her tort claims was her affidavit

reporting the alleged instruction from George to John about changing the IRA beneficiary. The trial court excluded Maria's affidavit and we have concluded the trial court did not err in excluding the affidavit. Therefore, Maria presented no evidence of a breach of any fiduciary duty or of a fact that was not disclosed. Because Maria failed to present evidence of at least one element of her tort claims, the trial court did not err in granting appellees' motion for summary judgment on those claims. *See Ford Motor*, 135 S.W.3d at 600; Tex. R. Civ. P. 166a(i). We overrule the portion of Maria's first issue in which she challenges the trial court's summary judgment on her tort claims.

## V. The trial court did not err in refusing to shift the burden of proof to John to rebut the presumption of fairness.

In Maria's second issue she challenges the trial court's summary judgment on the grounds that John did not overcome the presumption of unfairness in the transaction.

The person challenging the validity of an instrument generally bears the burden of proving the elements of undue influence by a preponderance of the evidence. *Quiroga v. Mannelli*, No. 01-09-00315-CV, 2011 WL 944399, at *5 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.). In some cases involving confidential or fiduciary relationships, however, the burden shifts to the person receiving the benefit to prove the fairness of the transaction. *Estate of Danford*, 550 S.W.3d 275, 281–82 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (fiduciary relationship created by power of attorney shifted burden of proof to fiduciary to show fairness of transaction). In other words, when a fiduciary transacts with the principal or accepts a gift or bequest from the principal, a burden is placed on the fiduciary to demonstrate the fairness of the transaction. *Estate of Grogan*, 595 S.W.3d 807, 818 (Tex. App.—Texarkana 2020, no pet.).

19

The gravamen of Maria's complaint on this issue is that George told John to change the beneficiary of the IRA and John refused to do so and failed to tell George that he had not done so. Maria's only evidence of an alleged transaction was her own self-serving affidavit, which the trial court properly excluded. Maria, therefore, offered no evidence of a transaction on which John could be required to offer evidence of fairness. Because there was no evidence of a transaction, the presumption of unfairness was never triggered. We overrule Maria's second issue challenging the summary judgment on this ground.

## VI. The January 29, 2021 order was not a final, appealable order.

In Maria's fourth issue she asserts the trial court's order signed January 29, 2021, which dismissed her claims, was a final, appealable order. In turn, Maria asserts the order from which she filed a notice of appeal, is void.

In Maria's second-amended petition, filed September 16, 2020, she asserted claims for declaratory relief, breach of fiduciary duty, and fraud against John, Eric, and Mark Donnelly, and Merrill Lynch, John's employer. On November 6, 2020, appellees, the Donnelly brothers, filed a motion for traditional and no-evidence summary judgment on all of Maria's claims. Merrill Lynch did not file a motion for summary judgment or join in appellees' motion. On January 27, 2021, the trial court signed an order sustaining appellees' objections to Maria's affidavit. On January 29, 2021, the trial court signed an order granting appellees' motion for summary judgment "in its entirety" and dismissing all of Maria's claims. That order contained no "Mother Hubbard" language or any other language indicating that it was a final order. On March 24, 2021, Maria filed a notice of nonsuit against Merrill Lynch.

On May 18, 2021, appellees moved for attorneys' fees and costs pursuant to section 37.009 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (permitting award of costs and reasonable and necessary attorney's

fees in a declaratory judgment action). In their motion appellees noted that they requested costs and attorneys' fees in their original answer to Maria's petition. Maria filed an objection to appellees' motion for attorney's fees asserting that the declaratory judgment action "was no more than a miniscule issue," and did not entitle appellees to recovery of fees under the statute. Maria later amended her objection asserting that appellees' attorney's fees were unreasonable and excessive related to the work performed on the declaratory judgment action.

On June 30, 2021, appellees filed a "Second Motion for Summary Judgment" in which they asserted Maria had produced no evidence that she was entitled to George's IRA. On September 13, 2021, the trial court signed a "Final Judgment" in which it dismissed all of Maria's claims, incorporated the January 29, 2021 judgment, and awarded attorney's fees to appellees. The trial court's judgment contained language noting that it was a final judgment, which "finally disposes of all parties and all claims, and is appealable."

Generally, subject to a few mostly statutory exceptions, parties may only appeal from a final judgment. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 632 (Tex. 2021) In cases in which a judgment has been rendered without a conventional trial on the merits, the judgment is not final unless it (1) actually disposes of all pending claims and parties or (2) clearly and unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so. *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (per curiam); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *see also Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) ("Instead, a clear and unequivocal statement of finality must be 'given effect' even if review of the record would undermine finality."). If the order contains a "clear and unequivocal" finality phrase disposing of the entire case, the order is final, and the

failure to actually dispose of all claims and parties renders the order erroneous but not interlocutory. *In re Guardianship of Jones*, 629 S.W.3d at 924; *In re Elizondo*, 544 S.W.3d 824, 828 (Tex. 2018) (orig. proceeding) (per curiam); *see also Lehmann*, 39 S.W.3d at 206 ("A statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt about the court's intention.").

The trial court's January 29, 2021 order was not final and did not purport to be final. Maria attempted to appeal the January 29, 2021 order and this court dismissed the appeal as interlocutory. *Donnelly v. Donnelly*, No. 14-21-00094-CV, 2021 WL 3161401, at *1 (Tex. App.—Houston [14th Dist.] July 27, 2021, no pet.) (mem. op.) ("The trial court's order in this case is interlocutory and not subject to immediate appeal because it does not dispose of all parties or issues in a particular phase of the proceedings below."). Maria did not file a motion for rehearing challenging this court's disposition of her first appeal, nor did she seek discretionary review in the supreme court.

Moreover, the January 29, 2021 order did not dispose of all claims and parties in that appellees had an outstanding claim for attorney's fees. *See McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (concluding judgment in which court did not dispose of defendant's request for attorney's fees did not dispose of all claims and parties and was interlocutory); *Fleming & Assocs., L.L.P. v. Kirklin*, 479 S.W.3d 458, 461 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (same).

By contrast, the September 13, 2021 order contained unequivocal language of finality making it a final, appealable judgment. *See In re Guardianship of Jones*, 629 S.W.3d at 924. We overrule Maria's fourth issue challenging the judgment she appealed as void.

## VII. The trial court erred in awarding unsegregated attorney's fees.

In Maria's fifth issue she asserts the trial court erred in awarding attorney's fees pursuant to section 37.009 of the Civil Practice and Remedies Code.[4]

In appellees' original answer they requested an award of costs and reasonable and necessary attorney's fees pursuant section 37.009 of the DJA. The trial court awarded appellees attorney's fees in the amount of $118,937.28 to defend Maria's suit. The trial court specifically found in the judgment that Maria's "claims for breach of fiduciary duty and fraud by nondisclosure are intertwined and inseparable from her declaratory judgment action." On appeal Maria contends that appellees failed to segregate their fees between defense of her declaratory-judgment claims and tort claims for which attorney's fees are not available.

Section 37.009 permits a trial court to award costs and reasonable and necessary attorney's fees as are equitable and just. *See* Tex. Civ. Prac. & Rem. Code § 37.009. Because attorney's fees are recoverable only when provided for by statute or the parties' contract, a fee claimant must segregate attorney's fees that are recoverable from those that are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 314 (Tex. 2006); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). An exception exists only when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible. *Kinsel*, 526 S.W.3d at 427. But, intertwined facts alone do not make fees for unrecoverable claims recoverable; "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14; *Lederer v. Lederer*,

---

[4] In this issue Maria asserts, in part, that the trial court lacked jurisdiction to award attorney's fees because its plenary power expired 30 days after signing the January 29, 2021 order. Because that order was interlocutory, as addressed in our disposition of Maria's fourth issue, we conclude the trial court's plenary power had not expired at the time it awarded attorney's fees.

561 S.W.3d 683, 701 (Tex. App.—Houston [14th Dist.] 2018, no pet.). When "discrete legal services" that advance both a recoverable and unrecoverable claim are intertwined, they need not be segregated. *Tony Gullo Motors*, 212 S.W.3d at 313–14. The fee claimant bears the burden of proving segregation is not required. *CA Partners v. Spears*, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When segregation is required, attorneys do not have to keep separate time records for each claim. *Tony Gullo Motors*, 212 S.W.3d at 314. Rather, an attorney's opinion that a certain percentage of the total time was spent on the claim for which fees are recoverable will suffice. *Id*. The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Id*. at 312–13; *CA Partners*, 274 S.W.3d at 81.

In this case, the trial court's attorney's fee award was based on evidence of unsegregated fees. Appellees argue they were not required to segregate their fees because the declaratory-judgment claim was inextricably intertwined with the fraud claims.

The trial court held a hearing on appellees' request for attorney's fees. At the hearing, the trial court admitted documents reflecting the resumes of appellees' attorneys, their billing records, which reflected fees incurred defending John Donnelly, fees incurred before September 16, 2020, and total fees reduced by 25 percent.

The trial court also admitted the affidavit of appellees' attorney, Robert MacIntyre. In his affidavit MacIntyre averred that the Donnelly brothers retained his firm to defend against a declaratory-judgment claim brought by Maria on January 16, 2020. On September 16, 2020, Maria amended her pleading to add tort claims. MacIntyre detailed the work done by the firm in filing various motions and

24

responding to Maria's first appeal of the interlocutory summary judgment order. MacIntyre opined that $118,937.28 was a reasonable and necessary amount of attorney's fees incurred by appellees through June 2021. Attached to MacIntyre's affidavit were invoices from the firm, and a spreadsheet showing co-counsel's time. MacIntyre opined that Maria's claims were intertwined, rendering it impossible to segregate fees because "the facts supporting her breach of fiduciary duty and fraud by nondisclosure claims are integral to and are the basis for her declaratory judgment action." MacIntyre continued, averring that the fees were impossible to segregate, but that as an alternative, appellees were willing to segregate 25 percent of the fees incurred on and after September 16, 2020 with the exception of time spent on the second summary judgment motion because that motion addressed only the additional declaratory judgment arguments.

At the hearing on appellees' motion, MacIntyre testified to his qualifications and experience. MacIntyre testified that his hourly billing rate was $550. MacIntyre was assisted by a briefing attorney whose billing rate was $300 per hour. The firm's paralegal worked on the case at an hourly rate of $150. Maria's original petition was for declaratory relief alone; the tort claims were added approximately eight months after the original petition was filed. The declaratory-judgment claim was filed against all three brothers, but the tort claims were filed only against John. MacIntyre testified that Maria's claims "arose out of that same transaction and are so intertwined that we believe them to be inseparable," which made segregation of fees "impractical and impossible." Appellees requested fees in the amount of $118,937.28. MacIntyre testified that it would be impossible to segregate the fees because the "facts supporting [Maria's] breach of fiduciary duty and fraud by nondisclosure claims are integral to and are the basis for her declaratory judgment action."

In the alternative, MacIntyre testified that all fees incurred before September 16, 2020, as reflected in the invoices admitted, pertained to the declaratory judgment action alone. Appellees agreed to segregate 25 percent of the fees incurred after September 16, 2020, as reflecting fees incurred in defense of the tort claims. MacIntyre then testified to conditional appellate fees.

The documents admitted at the hearing detail dates, hours spent, hourly rate, and a narrative description of legal services performed; for example, on September 15, 2020, MacIntyre spent two hours on "attn to discovery issue and review of amended pleading; memo to Mark and Robert regarding same[.]" Other than a few isolated instances, the billing records do not note whether the legal work was performed defending the declaratory-judgment claim or the tort claims. One noted exception explains that On October 12, 2020, MacIntyre's associate spent .40 hours reviewing "email from Mr. MacIntyre regarding Beneficiary Designation/Change Forms; review documents and print corresponding documents."

The parties agree that only one claim in this case allows for recovery of attorney's fees: the declaratory-judgment claim. MacIntyre argues he was not required to segregate his fees because the unrecoverable fees were "inextricably intertwined" with legal services advancing both recoverable and unrecoverable claims or defenses. But MacIntyre's evidence relied on an outdated explanation of the "inextricably intertwined" exception. In the trial court MacIntyre asserted that the recoverable and unrecoverable claims "arose out of that same transaction and are so intertwined that we believe them to be inseparable," which made segregation of fees "impractical and impossible."

While appellees cite the appropriate updated authority, the evidence at the hearing relied on the outdated holding in *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991), which explained the former exception to the duty to

segregate attorney's fees for claims arising out of same transaction that are "intertwined to the point of being inseparable." However, the Supreme Court of Texas has since modified the holding in *Sterling*, explaining that "[i]ntertwined facts do not make [unrecoverable] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors*, 212 S.W.3d at 313–14. "To the extent *Sterling* suggested that a common set of underlying facts necessarily made all claims arising therefrom 'inseparable' and all legal fees recoverable, it went too far," the court explained. *Id.* at 313.

MacIntyre's affidavit and testimony relied on a common set of underlying facts to argue that most of the legal fees were recoverable. But even when different claims are dependent on the same set of facts or circumstances, "that does not mean they all require[] the same research, discovery, proof, or legal expertise." *Id.* at 313. Still, "many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other." *Id.*

Here, MacIntyre opined that 75 percent of the fees would have been necessary without the unrecoverable fees. The trial court, however, awarded appellees 100 percent of their attorney's fees, finding no duty to segregate. MacIntyre met his initial burden of providing sufficient evidence to support a reasonable amount of attorney's fees, and Maria has not challenged the reasonableness of the fees on appeal. *See generally, Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483–84 (Tex. 2019). While MacIntyre did not specifically identify unrecoverable fees that had not been segregated, he identified a percentage of time that could reasonably be attributable to recoverable fees, 75%, significantly less than the percentage actually recovered, 100%. MacIntyre and appellees have provided at least some evidence of the amount of attorney's fees they should be awarded. *Tony*

*Gullo Motors*, 212 S.W.3d at 314 ("Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be."). Therefore, we remand this issue to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees to be awarded to appellees. *See id.* (remanding issue of attorney's fees that should have been segregated to trial court). We sustain Maria's fifth issue.

## CONCLUSION

We reverse the portion of the trial court's judgment awarding attorney's fees in the amount of $118,937.28 and remand that issue to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees. We affirm the trial court's judgment in all other respects.


/s/    Jerry Zimmerer
        Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

28